NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| MELVIN RIOS, | : | Civil Action No.: 12-2900 (JLL) |
| Plaintiff, | : | |
| v. | : | **OPINION** |
| MICHAEL ASTRUE<br>Commissioner of Social Security, | : | |
| Defendant. | : | |

Presently before the Court is Plaintiff Melvin Rios's Appeal seeking review of a final determination by Administrative Law Judge ("ALJ") Donna A. Krappa denying his application for Disability Insurance ("SSDI") and Supplemental Security Income ("SSI"). The court has jurisdiction to review this matter pursuant to 24 U.S.C. § 405(g). The Court has considered the submissions made in support of and in opposition to the instant appeal and decides the matter without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons set forth below, the Court will affirm the final decision of the Commissioner.

I.  **FACTS AND PROCEDURAL HISTORY**

Plaintiff filed an application for SSDI and SSI benefits on September 16, 2008, due to lumbar degenerative disc disease, internal derangement of the right knee, substance abuse, an anxiety disorder, and post-traumatic stress disorder. Pl. Br. at 2. This application was denied on May 22, 2009, and again upon reconsideration on February 22, 2010. R. at 13.[1]

Plaintiff timely filed a request for a hearing before an ALJ, which occurred on October 3, 2010, before ALJ Krappa. After hearing testimony from Plaintiff and Steven H. Feinstein,

---
[1] "R." refers to pages of the Administrative Record SSA.

C.R.C, a vocational expert, ALJ Krappa found that Plaintiff had not engaged in substantial gainful activity since April 30, 2004.[2]  R. at 16.  ALJ Krappa also found that the plaintiff suffered from lumbar degenerative disc disease, internal derangement of the right knee, substance abuse, an anxiety disorder, and post-traumatic stress disorder.  *Id.*  She found that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1."  *Id.* at 17.

ALJ Krappa also found that while Plaintiff was unable to perform his previous relevant work, he was able to perform the exertional demands of a full range of sedentary work.  *Id.* at 18, 24.  Specifically, he could lift or carry 20 pounds occasionally and 10 pounds frequently; stand or walk for 2 hours in an 8-hour workday; sit for 6 hours in an 8-hour workday (given the opportunity to stand and stretch for 3 – 5 minutes each hour); and perform unlimited pushing and pulling within the abovementioned weight restrictions.  *Id.* at 18.  Further, he could perform jobs as long as they: did not require use of ladders, ropes, or scaffolds; required only occasional use of stairs or ramps and balancing, stooping, kneeling, crouching, and/or crawling; required no exposure to unprotected heights, hazards, or dangerous machinery; and involved no concentrated exposure to temperature extremes.  *Id.*  Finally, the ALJ found that he could perform work that was unskilled and repetitive and required no close interaction with others (to avoid distraction).  *Id.*

After a denial of a request for review by the Appeals Council, Plaintiff filed this timely appeal on May 15, 2012.

## II.   STATEMENT OF THE LAW

### A.  Standard of Review

---

[2] The plaintiff had initially claimed as of November 1, 2002.  However, at the hearing before ALJ Krappa, Plaintiff amended his alleged onset date to April 30, 2004, as this was the earliest time period for which he could offer medical evidence.  Pl. Br. at 5.

This Court must affirm an ALJ's decision if it is supported by substantial evidence. *See* 42 U.S.C. §§ 405(g), 1383(c)(3). Substantial evidence is "more than a mere scintilla" and "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 9 S.Ct. 1420, 28 L.Ed.2d 842 (1971). The court defers to the findings and conclusions of the ALJ, but has the "duty to scrutinize the record as a whole to determine whether the conclusions reached are rational" and supported by substantial evidence. *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978). The court is not "empowered to weigh the evidence or substitute its conclusions for those of the fact-finder." *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992).

### B. The Five-Step Evaluation Process

Under the Social Security Act, a claimant must demonstrate that he is disabled based on an inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). A person is disabled for these purposes only if his physical or mental impairments are "of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other substantial gainful work which exists in the national economy." 42 U.S.C. § 1382c(a)(3)(B).

The Social Security Administration has established a five-part sequential evaluation process for determining whether a complainant is disabled. 20 C.F.R. §§ 404.1520, 416.920. First, the Commissioner of Social Security ("the Commissioner") decides whether the complainant is currently engaging in substantial gainful activity. If the complainant meets this test, then the Commissioner must determine whether the complainant's impairments or

combination of impairments are severe. If the impairment is determined to be severe, the Commissioner must then decide whether the complainant suffers from a listed impairment or its equivalent. If he does not, the Commissioner must then decide whether, based on the complainant's "residual functional capacity" ("RFC"), the complainant is able to perform his past relevant work. If the complainant is unable to perform said work, then the Commissioner must proceed to the final test. Up to this point, the burden falls upon the complainant to prove his disability. *See Wallace v. Sec'y of Health & Human Servs.,* 722 F.2d 1150, 1153 (3d Cir. 1983). If the complainant has carried his burden of proof to this stage, the burden shifts to the Commissioner to prove that other work exists in significant numbers in the national economy that the plaintiff could perform given his RFC, age, education, and past work experience. 20 C.F.R. § 404.1520(a)(4)(v). If the Commissioner provides sufficient evidence to overcome this burden and shows that there is work in a significant number of jobs that the plaintiff can perform, the plaintiff is not disabled. *Id.*

## III.   DISCUSSION

Plaintiff makes two allegations in support of his appeal. First, he alleges that the Commissioner erred as a matter of law in determining that Plaintiff could perform a range of sedentary work. Second, he alleges that the Commissioner failed to establish that there is other work in the national economy that Plaintiff could perform. Both of these objections are to the ALJ's step five determination that the plaintiff could perform the full range of sedentary work and as to the number of jobs that were available to him regionally. The Court will address each of these arguments in turn. Plaintiff does not dispute the ALJ's findings as to steps one through four of the Social Security Administration's five-step evaluation of disability and, as such, this opinion does not discuss the findings thereon.

**A. The ALJ's Analysis of Plaintiff's RFC**

As previously stated, at step five of her determination, ALJ Krappa found that the plaintiff was able to perform the exertional demands of a full range of sedentary work. Plaintiff argues that ALJ Krappa's determination was erroneous since Plaintiff's functional limitations would not allow this type of work. Pl. Br. at 11. The Commissioner counters that, based on the ALJ's findings, the ALJ could have decided that Plaintiff was able to perform a range of sedentary to light work under 20 C.F.R. § 404.1567(b) and 20 C.F.R. § 416.967(b).

   **1. Plaintiff's Need for Frequent Breaks**

In support of his argument, Plaintiff relies upon Social Security Ruling 96-9p ("SSR 96-9p"), which instructs adjudicators on the determination of the residual functional capacity of a claimant when the claimant is able to perform less than a full range of sedentary work. SSR 96-9p states that "[w]here there is a reduction in an individual's exertional or nonexertional capacity so that he or she is unable to perform substantially all of the occupations … the individual will be unable to perform the full range of sedentary work: the occupational base will be 'eroded.'" SSR 96-9p at *12. In particular, SSR 96-9p provides that if an individual needs to "alternate the required sitting of sedentary work by standing (and possibly walking) periodically" and this need cannot be met through "scheduled breaks and a lunch period, the occupational base for a full range of unskilled sedentary work will be eroded." *Id.* at *18. The extent of this erosion must depend upon the facts of the case as evidenced in the record and the RFC assessment must specify the frequency of the individual's need to alternate sitting and standing. *Id.* at *19. However, unless the "erosion" is significant "[t]here may be a number of occupations from the approximately 200 occupations administratively noticed, and jobs that exist in significant

numbers, that an individual may still be able to perform even with a sedentary occupational base that has been eroded." *Id.* at *12.

At the hearing before the ALJ, Plaintiff testified that, while he experienced pain if he is forced to sit for an extended period, he "could probably go over an hour if [he] just keep[s] on twisting left, right … [m]ove a little bit." R. at 242-43. He also testified that he could stand for "a good 45 minutes [to] an hour" before experiencing pain. R. at 242. Thus, the Court finds that the ALJ's conclusion that Plaintiff could perform work that requires sitting for 6 hours in an eight hour day, given the opportunity to stand and stretch for 3 to 5 minutes at the 45-minute to one hour mark, is supported by substantial evidence contained in the record.

Next, Plaintiff cites to Social Security Ruling 83-12 for the proposition that an individual who may be able to sit for a time, but must stand or walk for a while before returning to work "is not functionally capable of doing either the prolonged sitting contemplated in the definition of sedentary work (and for the relatively few light jobs which are performed primarily in a seated position) or the prolonged standing or walking contemplated for most light work." Pl. Br. at 13; SSR 83-12 at *9. Plaintiff ignores the next sentence of that ruling, however, which provides that "[p]ersons who can adjust to any need to vary sitting and standing by doing so at breaks, lunch periods, etc., would still be able to perform a defined range of work." *Id.* In concluding that Plaintiff retained the ability to perform the exertional demands of a full range of sedentary work, given a short break each hour, the ALJ relied upon Plaintiff's own testimony and incorporated that testimony into her conclusions. *See* R. at 19, 242-43. Thus, as explained *supra* in the preceding paragraph, the ALJ's conclusion is supported by substantial evidence as contained in the record.

**2. Plaintiff's Allegations of Pain**

Additionally, Plaintiff argues that the ALJ did not consider Plaintiff's allegations of pain sufficiently, as required by Social Security Ruling 96-8p ("SSR 96-8p").  Under that ruling, if pain is alleged, an RFC assessment must "contain a thorough discussion and analysis of the objective medical and other evidence, including the individual's complaints of pain and other symptoms and the adjudicator's personal observations, if appropriate; include a resolution of any inconsistencies in the evidence as a whole; and set forth a logical explanation of the effects of the symptoms, including pain, on the individual's ability to work." SSR 96-8p. An ALJ may reject, however, testimony of subjective complaints where it is not consistent with the medical evidence. *See Burns v. Barnhart*, 312 F.3d 113, 130-31 (3d Cir. 2002) (rejecting as baseless plaintiff's assertion that he could not lift more than a pound when his own testimony – he played the drums and cared for his four dogs – and the medical evidence proved otherwise).  Here, the ALJ found that Plaintiff was not a credible witness as he had lied to the DDS examiner when Plaintiff requested to reschedule a consultative examination.  In particular, Plaintiff told the examiner that he would be out of the country, when, in fact, he was incarcerated on a drug charge.  R. at 21.  In light of this finding, the ALJ concluded that the lie "diminishes his credibility and suggests that he is willing to misrepresent the facts if it will present him in a better light and help him to secure benefits." *Id.*

The ALJ also concluded that the report of Plaintiff's treating physician, Dr. Sidali, was not credible. R. at 23. "[A] treating physician's diagnosis is to be given greater weight in the scales than the government's physician, [but] only if the treating physician supplies sufficient medical data to substantiate the diagnosis." SSR 83-47c at *39-40 (citing 20 C.F.R. § 404.1529 (1981)); *see also* SSR 82-48c at *18 ("[T]he ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion.") ALJ Krappa explained that there was a

significant break between Plaintiff's last documented visit and the report prepared for the disability claim.  Dr. Sidali also did not quantify the extent of Plaintiff's limitations.  Finally, Dr. Sidali failed to provide, in the relevant areas of the report, medical findings that supported his opinions.  *Id.*  Upon review of Dr. Sidali's report, the Court also notes that Dr. Sidali checked off virtually every limitation on the standard form, including impairments to Plaintiff's sight, hearing, and speaking, of which there is no evidence in the record. R. at 196.  ALJ Krappa explained that treating physicians are subject to the same biases and pressures as other witnesses and that treating physicians can be tempted to overstate a patient's limitations, out of either sympathy for the Plaintiff's financial and/or medical circumstances or for personal gain in the form of future services from either the claimant or persons whom the claimant referred to the doctor.  R. at 22.  Thus, the ALJ's decision not to afford great weight to Dr. Sidali's opinion is not an abuse of discretion.

On the other hand, the examinations and findings of Dr. Kopel Burk, the DDS physician that examined Plaintiff, were incorporated almost verbatim in the ALJ's findings.  R. at 18; *cf.* R. at 187-91.  For example, Dr. Burk noted that Plaintiff demonstrated a normal gait, the ability to do a full squat, a range of motion in the lumbar area within normal limitations but with pain on movement, and a range of motion in the knees within normal limitations with no pain or instability.  R. at 187.  The ALJ noted these conclusions in her findings.  R. at 20.  Further, as explained *supra*, the plaintiff's own testimony that he could sit or stand for approximately 45 minutes to one hour is reflected in the ALJ's finding that he requires a break each hour for 3 to 5 minutes to stand and stretch.  R. at 18; *cf.* R. at 19.  Thus, the ALJ's conclusions regarding Plaintiff's subjective complaints of pain were the product of a thorough discussion and analysis

8

of the objective medical and other evidence, including Plaintiff's complaints of pain and other symptoms, Dr. Burk's report, and the ALJ's personal observations.

**B. The Commissioner's Burden of Proof to Show a Significant Number of Jobs**

Plaintiff also contends that the vocational expert's testimony, relied upon by the ALJ in her opinion, did not comport with the requirements of the U.S. Department of Labor's Dictionary of Occupational Titles ("DOT"). The Commissioner correctly points out that the ALJ specifically asked the vocational expert whether his testimony was consistent with the DOT and he responded in the affirmative. *See* R. at 255. In any event, the plaintiff cites to no case law that mandates a vocational expert's testimony be fully consistent with the DOT. Indeed, the argument under this section merely reiterates plaintiff's objection to the ALJ's finding that plaintiff could perform the exertional demands of a full range of sedentary work. As the propriety of that finding has already been discussed, *supra*, the Court will not discuss it further here. *Rutherford v. Barnhart*, 399 F.3d 546, 554 n. 8 (3d Cir. 2005) ("Objections to the adequacy of hypothetical questions posed to a vocational expert often boil down to attacks on the RFC assessment itself.")

Plaintiff next argues that, despite the vocational expert's assertion to the contrary, his testimony was inconsistent with the DOT because the vocational expert failed to identify the DOT codes for the jobs he recommended and that he misidentified and misclassified the Specific Vocational Profile ("SVP") levels for some of the recommended occupations. The Commissioner, in response, argues that even if the disputed occupations were removed from the analysis, there still exist a significant number of undisputed jobs such that the ALJ's ruling could be upheld.

In support of his position, Plaintiff relies upon *Rutherford*, *supra*. In that case, the vocational expert's testimony did not consider the plaintiff's obesity in determining which jobs she was capable of performing. Despite this, the Third Circuit did not reverse or remand the case. Instead, it held that even if a vocational expert's testimony is inconsistent, if substantial evidence exists in the record to support the ALJ's determination, the ruling will be upheld. *Id.* at 557.

Here, the vocational expert identified three potential jobs: toy assembler or fishing reel assembler, addressing clerk, and credit clerk. The vocational expert claimed that each of these jobs had an SVP of 2, sedentary and that, respectively, there were 2,100, 2,300, and 1,000 jobs locally for each of these job classifications. R. at 254. Based on the transcript of the hearing, it is unclear as to whether the vocational expert was suggesting two different jobs – toy assembler and fishing reel assembler – or one job – fishing reel assembler (toy/sport equipment). If it was the latter, then the SVP of 2 does correspond to the DOT, as the Plaintiff concedes. Pl. Br. at 18. If it is the former, then the toy assembler job is actually listed as light work, which the Commissioner concedes in his brief. Def. Br. at 15. The Commissioner posits that even if the toy/fishing reel assembler job is disregarded, the other two jobs are available in significant numbers and that the ALJ's findings, therefore, were supported.

Plaintiff also takes issue with the vocational expert's opinion that the plaintiff could perform the job of "credit clerk." The vocational expert did not identify which credit clerk job he was suggesting. R. at 254. The plaintiff points out that the job of Credit Clerk (clerical), DOT 205.367-022, while sedentary, carries an SVP of 4, which is beyond the Plaintiff's capabilities. The Commissioner identifies a job of Charge Account Clerk (clerical) (DOT

205.367-014), which carries an SVP of 2.  Neither party disputes the availability of addresser (clerical) (DOT 209.587-10, SVP 2).

Social Security Ruling 00-4p provides guidance for the adjudicator's duty when vocational expert testimony conflicts with the DOT.  If the vocational expert's testimony does conflict, then the adjudicator must identify the conflicting testimony, resolve the conflict, and must explain her rationale in resolving the conflict.  ALJ Krappa included her view of the expert's testimony in her opinion:

> The vocational expert testified that, given all of these factors, the [Plaintiff] would be able to perform the requirements of representative occupations such as toy/fishing reel assembler (2,100 jobs existing regionally; 176,000 nationally); addressing clerk (2,300 jobs regionally; 67,000 nationally); and credit clerk (1,000 existing regionally; 16,000 nationally).  I find this to be a "significant number" of jobs.
> Pursuant to SSR 00-4p, the vocational expert's testimony is consistent with the information contained in the Dictionary of Occupational Titles.

R. 25.  ALJ Krappa, then, determined that there was no conflict and that the vocational expert was referring to the fishing reel assembler (toy/sport equipment) job, which was not inconsistent with the DOT.  Based on the apparent lack of conflict as found by the ALJ, the ALJ did not derogate from her duty.

However, even assuming, *arguendo*, that there was enough inconsistency that this job was unavailable to the Plaintiff and assuming further that the disputed credit clerk job is unavailable, the Commissioner argues that an ALJ need only find one type of work, available in significant numbers, to find that Plaintiff was not disabled.  *See* 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1566(b).  The addressing clerk job had 2,300 jobs existing regionally.  R. at 254.  Even this number of jobs could have been found by the ALJ to be "significant."  *See*, *e.g.*, *Craigie v. Bowen*, 835 F.2d 56, 58 (3d Cir. 1987) (noting that 200 jobs is a significant number).

Thus, the Commissioner has carried his burden of showing that a significant number of jobs exist in which Plaintiff can be employed.

Plaintiff also argues that the ALJ failed to include all of Plaintiff's mental impairments in her hypothetical questions to the vocational expert. Plaintiff points out that Social Security Ruling 85-15 ("SSR 85-15") mandates that the adjudicator consider the effect of stress on the claimant's ability to return to work. The Plaintiff ignores, however, that the section he cites to deals with people with serious mental disorders and their ability to adapt in a workplace environment. "The reaction to the demands or work (stress) is highly individualized, and mental illness is characterized by adverse responses to seemingly trivial circumstances." SSR 85-15 at *15. The wording and structure of this subsection require that the ALJ must first find that the complainant has a severe mental disorder before being required to consider stress in her determination of the RFC of a complainant. *See generally* SSR 85-15 at *14-15 ("Since mental illness is defined and characterized by maladaptive behavior, it is not unusual that the mentally impaired have difficulty accommodating to the demands of work and work-like settings.") ALJ Krappa found that "[w]hile mental disorder due to traumatic head injury was listed among the diagnoses by doctors who performed mental evaluations for treatment purposes in August 2008 and March 2009, fair insight and/or judgment were the most abnormal cognitive findings made at those examinations." R. at 20. However, the ALJ went on to conclude that "there was **no** mention of abnormal affect, or of any other sign characteristic of the severe mental impairments." *Id.* (emphasis in original). Thus, the ALJ did not err, as a matter of law, in failing to consider Plaintiff's allegations of stress.

Plaintiff also mischaracterizes the conclusion of medical examiner Leslie Williams. Under Third Circuit precedent, "the hypotheticals posed must 'accurately portray' the claimant's

impairments and that the expert must be given an opportunity to evaluate those impairments 'as contained in the record.'" *Rutherford*, 399 F.3d at 554. Dr. Williams concluded that Plaintiff was "capable of understanding instructions and sustaining pace and persistence in simple, routine, low contact work." R. at 163. In her interrogatories to the vocational examiner, ALJ Krappa specifically posited that the hypothetical subject "can perform work that is unskilled and repetitive, and that does not require work closer than three to five feet to others to avoid distraction. Any closer than that would not be permitted." Further, the expert testified that he had reviewed the plaintiff's file in preparation for the hearing. R. at 252-53. As there is no evidence in the record to contradict the ALJ's ultimate finding, and as this appears to be a rehash of the plaintiff's argument against the ALJ's RFC limitations,[3] which argument has already been discussed, *supra*, this Court finds no support for overturning the ALJ's ruling. This Court cannot say that ALJ Krappa failed to consider Plaintiff's mental impairments or failed to include same in her hypothetical questions to the vocational expert when determining Plaintiff's RFC and, by extension, his ability to perform a range of sedentary work.

## IV. CONCLUSION

The Court finds, for the reasons discussed above, that the ALJ did not err as a matter of law in determining that Plaintiff could perform the exertional demands of a full range of sedentary work. Further, the Commissioner has sustained his burden of showing a significant number of jobs in which Plaintiff could work. The Court has reviewed the entire record and finds that the ALJ's determination that Plaintiff was not disabled was supported by substantial evidence. Therefore, the decision of the ALJ is affirmed.

---

[3] *See, e.g., Rutherford*, 399 F.3d at 557-58 (rejecting an already discussed argument challenging the ALJ's RFC finding).

An appropriate Order accompanies this Opinion.

Dated: February 15, 2013                                s/ Jose L. Linares
                                                        Jose L. Linares
                                                        United States District Judge